[Civ. No. 1052. First Appellate District.—August 15, 1911.]

TIREY L. FORD, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO, and Hon. WILLIAM P. LAWLOR, Judge Thereof, Respondents.

CRIMINAL LAW—POSTPONEMENT OF TRIAL WITHOUT GOOD CAUSE—DISMISSAL OF INDICTMENTS—MANDAMUS.—The remedy by *mandamus* may be invoked to compel the dismissal of indictments pending against a defendant for a series of years, and which were continued for trial from time to time for more than sixty days after the filing of the indictments without good cause, and over the protest of the petitioner.

ID.—DUTY RESTING UPON PROSECUTION TO SHOW GOOD CAUSE FOR DELAY.—If there is any good cause for holding a defendant for trial for a longer time than that fixed by law without a trial, it is a duty resting upon the prosecution to show it.

ID.—CONSTITUTIONAL AND STATUTORY RIGHT TO SPEEDY TRIAL.—A defendant accused of crime has a constitutional and statutory right to a speedy trial, and section 1382 of the Penal Code provides: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed: . . . If a defendant, whose trial is not postponed upon his application, is not brought to trial within sixty days after the finding of the indictment, or filing of the information."

ID.—STATUTE A CONSTRUCTION OF CONSTITUTIONAL RIGHT.—The statute is a construction of the constitutional provision for a speedy trial so far as to indicate what is a reasonable time within which the case should be brought to trial in order that the constitutional

17 Cal. App.—1 (1)

guaranty may be kept; and it may be fairly interpreted to mean that this guaranty is violated where over sixty days are allowed to lapse without a trial, there being no good reason for the delay and the defendant not consenting thereto.

ID.—DISCHARGE OF PRISONER UPON BAIL NO CAUSE FOR DELAY.—The constitutional guaranty of a speedy trial and the statutory provision against unexcused delay are not affected by the fact that the prisoner is discharged upon bail and has not suffered by reason of the delay.

ID.—ABSENCE OF UNSUBPOENAED WITNESS FROM STATE NO EXCUSE.— The absence of an unsubpoenaed witness from the state for a series of years, without any information as to when he would return to the state, cannot justify prolonged continuances of the trial for a series of years, without the consent of the defendant, where it appears that such witness left the state without concealment, and without any order of court requiring his attendance at any future trials.

ID.—SHOWING REQUIRED AS TO ABSENT WITNESS.—In order to continue a trial on the ground of an absent witness it must be shown, not only that the witness is material, but that the party who applies therefor has been guilty of no neglect, and that the witness can be had at the time to which the trial is postponed, and these rules apply with ever-increasing rigidity where repeated continuances are asked for on account of the absence of such witness, and a stronger showing of diligence and certainty is required in support of each successive application.

ID.—POSSIBILITY OF ABSENCE DUE TO DEFENDANT.—If there were a showing that the absence of the witness was due to the action of the defendant, the maxim of jurisprudence would apply that "no one can take advantage of his own wrong," and such a showing would be an ample justification for prolonged, if not indefinite, continuances in aid of a *bona fide* attempt to apprehend a defaulting witness, which would probably result in his return to the jurisdiction of the court. But no such showing is made or suggested to this court.

ID.—ABSENCE OF EXCUSE—PEREMPTORY MANDATE TO DISMISS INDICTMENTS.—It is held that the right of the petitioner is so clear upon the law and the facts to the relief that he seeks that a peremptory mandate must be issued to the judge of the superior court commanding and directing him to dismiss all indictments pending against the petitioner.

PETITION for writ of mandate to the Superior Court of the City and County of San Francisco. Wm. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, A. A. Moore, and Stanley Moore, for Petitioner.

C. M. Fickert, District Attorney, and Fred L. Berry, Assistant District Attorney, for Respondents.

LENNON, P. J.—This is an application for a peremptory writ of mandate directed to the superior court of the city and county of San Francisco and to Honorable William P. Lawlor, judge thereof, requiring and commanding the dismissal of fourteen indictments for felony pending against petitioner in said superior court since May 25, 1907, and which it is claimed were continued for trial from time to time for more than sixty days after the filing of said indictments without good cause and over the protest of the petitioner.

The petition for the writ was in the first instance presented to the supreme court of this state, and by that court transferred to this court for hearing and determination.

On July 16, 1911, an alternative writ of mandate issued out of this court directed to respondents, requiring the dismissal of said indictments, or that cause be shown here on July 24th following why the same had not been dismissed. On the last-named day the said matter came on for hearing, and after argument by the respective counsel for the petitioner and respondents, the cause was submitted for decision upon the facts stated in the petition and respondents' return to the alternative writ of mandate.

No question arises nor can arise here as to the right of the petitioner to invoke the remedy of *mandamus* if the facts pleaded and admitted to be true required as a matter of law the dismissal of the indictments by the lower court. That question was determined in petitioner's favor by the supreme court of this state sitting *in bank* upon his recent application to that court for a writ of *habeas corpus*. (*In re Ford,* 160 Cal. 334, [116 Pac. 757].) Upon the record before us the only question to be decided is the sufficiency of the showing made here in justification of the lower court's refusal to grant petitioner's several motions to dismiss said indictments.

It is the established constitutional and statutory rule of law in this state that every man accused of crime by indictment or information must be brought to trial, unless good cause for delay be shown, within sixty days after the finding and filing of such information or indictment. The rule in this behalf was first declared in *Ex parte Vinton* (Cal.), 47 Pac. 1019, and was affirmed in *People* v. *Morino,* 85 Cal. 515, [24 Pac. 892], where our supreme court, speaking through Mr. Justice Works, said: "A party charged with crime has the constitutional right to a speedy trial, and the court has no discretionary power to deny him a right so important, or to prolong his imprisonment without such trial beyond the time provided by law. The statute is imperative; the court, unless good cause be shown to the contrary, must order the prosecution to be dismissed. Here no cause for delay was shown. It was enough for the defendant to show that the time fixed by the statute after information filed had expired, and that the case had not been postponed on his application. If there was any good cause for holding him for a longer time without a trial, it was for the prosecution to show it."

The limit of time beyond which the trial of a person charged with crime cannot be extended without violating the constitutional guaranty of a speedy trial is fixed by section 1382 of the Penal Code of this state, which provides: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases: (1) When a person has been held to answer for a public offense, if an indictment is not found or an information filed against him, within thirty days thereafter. (2) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment, or filing of the information."

The relation which this section bears to the constitutional provision is clearly defined in the course of an opinion written by Mr. Justice Temple, wherein it is said:

"The statute is a construction of the constitutional provision so far as to indicate what is a reasonable time within which the case should be brought to trial in order that the constitutional guaranty may be kept; and it may be fairly interpreted to mean that this guaranty is violated whenever sixty days is allowed to elapse without a trial, there being

no good reason for delay and the defendant not consenting thereto. . . . It is sufficient for the defendant, in order to make out his case upon a motion for a dismissal in the trial court, to show that he has been detained without a trial for more than sixty days. Upon such showing the court should dismiss the case unless good cause for detaining the defendant and for continuing the prosecution is shown on behalf of the people. There is no presumption in such case, at least in the trial court, that the court has acted regularly or that good cause in fact exists. It is well to remember that this case involves fundamental rights and is of universal interest. Around those rights the English have waged their great battle for liberty. Without the narration of the conflicts to which they have given rise the history of the English people would be a dull affair. The right of the government with reference to persons accused of crime has been, and is yet, a matter of grave consideration. It led to the agitation which wrung from power the Great Charter, the Petition of Right and the *Habeas Corpus* Act. All the great achievements in favor of individual liberty of which the English people are so justly proud may be said to have come through contests over the rights of persons imprisoned for supposed crime." (*Ex parte Begerow,* 133 Cal. 349, [85 Am. St. Rep. 178, 65 Pac. 828, 56 L. R. A. 513].)

The wisdom and justice of the constitutional provision and the statutory enactment in aid thereof, which guarantee to every man accused of crime a trial within sixty days after the filing of an indictment or information, have never been successfully disputed. Since the Vinton case (*supra*) our supreme court has rigidly adhered to and applied the rule in every case that has come before it; and if ever there was any doubt as to what the duty of a trial judge is with reference to granting to a defendant a trial within the prescribed sixty days, whether the defendant be in jail or at liberty on bail, that doubt must be dispelled by the supreme court's most recent, as well as its very clear, comprehensive and emphatic, exposition of the rule which is found in the case of *In re Ford,* 160 Cal. 334, [116 Pac. 757], where, in an opinion concurred in by the six justices constituting the two departments of that court, it was said: "The constitution of this state guarantees to every person charged with crime the right to a

speedy and public trial. (Const., art. I, sec. 13.) In order to prescribe with definiteness what should constitute a reasonable time under the constitutional mandate, it is declared in the Penal Code that unless good cause is shown to the contrary, a prosecution must be dismissed against a defendant when an indictment or information has not been filed against him within thirty days after he was committed to answer, or he is not brought to trial within sixty days after the filing of the indictment or information against him, and the trial had not been postponed on his application. (Penal Code, sec. 1382.) The effect of the last portion of the code provision is to imperatively fix the time as sixty days within which, under the constitutional guaranty, a defendant must be brought to trial, and to declare that the guaranty is violated and the defendant entitled to a dismissal of the indictment against him when he is not brought to trial within said sixty days after it is filed, unless good cause for not doing so is shown, or the postponement of his trial beyond that period is made on his application.''

With the law undisputed, and the fact admitted that, over-the continued protest and demand of petitioner, all of the indictments remaining against him have been continued without trial for nearly two years, there remains to be considered and decided only the question of the sufficiency of the justification offered by the trial court for its action in this regard.

The return of the Honorable William P. Lawlor to the alternative writ of mandate concedes the facts stated in the petition for the writ to be true, and then, in response to the command of the writ that cause be shown why the indictments have not been dismissed, declares (1) that the petitioner has been at large upon bail, and therefore has not suffered by reason of the delay; (2) that the refusal to dismiss the indictments ''was with good cause and in the exercise of sound discretion upon good and sufficient showing duly made in the premises''; and (3) ''That it appears directly and by inference upon the record herein that James L. Gallagher is an indispensable witness in the above-entitled cause and to the trial thereof; that he is now and for more than nineteen months last past has been absent from the state of California; that the record discloses the fact that San Francisco, California, is the home of said witness; that he was absent travel-

ing in foreign countries; that his residence has been in California for many years last past; that he has many property interests in the state of California; that many of his relatives and members of his immediate family reside in San Francisco, California, *and that by inference* in all likelihood he will return to said jurisdiction.''

It will be noted, in passing, that no showing or suggestion is made as to when, if ever, the absent witness will return to this jurisdiction.

The first response involves in effect the proposition that the constitutional guaranty of a speedy trial does not apply to a defendant who is fortunate enough to secure bail. This proposition has been fully and finally disposed of in *In re Ford*, 160 Cal. 334, [116 Pac. 757], and requires no further consideration here.

The second and third responses are so clearly interwoven that they must be taken and considered together. The mere statement that a trial was refused for "good cause and in the exercise of a sound discretion" is meaningless, unless it be construed in connection with the facts relied upon to support the assertion that the cause is good and the discretion sound.

Those facts, as revealed by the record before us, are in substance as follows:

On May 25, 1907, fourteen indictments were found and filed against the petitioner herein, charging him with the crime of bribery. Subsequently, on March 26, 1908, three more indictments charging an offer to bribe were returned and filed against the petitioner. One of these latter indictments was dismissed by the trial court, for the reason that it involved the same subject matter of another indictment upon which the petitioner had been previously tried and acquitted. All of the indictments arose out of a single transaction, in which it was charged the petitioner had bribed or offered to bribe various members of the board of supervisors of the city and county of San Francisco for the purpose of securing to the United Railroads, a corporation, the grant of an overhead trolley franchise. Petitioner was tried three times upon one or another of the first batch of indictments. The first trial, which was had within a week of his plea of not guilty, resulted in a disagreement of the jury; and upon

the two remaining trials petitioner was by the verdict of the jury declared not guilty of the crimes charged against him. The second trial of petitioner was commenced within two weeks after the conclusion of the first trial, and was ended on the third day of December, 1907. The third and last trial of petitioner was commenced on the ninth day of April, and ended on the second day of May, 1908; and he has not been brought to trial since upon any of the indictments pending against him. During the three years which have intervened since the last trial of petitioner no effort has been made to bring him to trial upon any one of the remaining indictments; and in those three years the records of the trial court show some fifty-six continuances from time to time of all of said indictments. These continuances were in each instance granted at the request of the people over the objection of the petitioner and in the face of his repeated demands for a speedy trial and disposition of the charges. Upon more than forty different occasions from the first day of February, 1908, to the twenty-fifth day of April, 1909, petitioner answered that he was ready for trial, and upon each occasion objected to the continuances which upon each occasion were ordered by the trial court.

However, from June 25, 1909, to January 10, 1910, petitioner for various reasons, not necessary to be stated here, consented to continuances from time to time and up to and including the tenth day of January. From this date on to the twenty-fifth day of April, 1910, petitioner, upon every occasion when the cases against him were called, repeatedly and consistently demanded a trial and protested against any further continuances.

On April 25, 1910, petitioner moved the trial court to dismiss all of the indictments upon the ground that a trial on each of said indictments had been denied him without good cause and against his protest for more than sixty days from the date of the filing of said indictments. The judge of the lower court refused to decide petitioner's several motions for a dismissal, and kept them undecided for more than four hundred days without any suggestion or intimation that any effort would ever be made to bring petitioner to trial upon any of the indictments. The lower court justified its refusal to grant petitioner's motions to dismiss, or to give him a

speedy trial upon all or any one of the remaining indictments, solely upon the ground of the absence from the state of the witness James L. Gallagher, who had testified as a witness for the people in the three trials already had.

The record before us contains evidence which tends to show that, notwithstanding the fact that all of the fourteen indictments remaining against petitioner had been set down for trial on the calendar of the lower court for November 29, 1909, Gallagher, an indispensable witness for the people, departed from the state of California on November 26, 1909. This witness was not, either at the time of his departure or at any time prior thereto, under subpoena or order of the trial court to appear as a witness upon behalf of the people. Upon an investigation instituted by the trial court upon its own motion it was ascertained that Gallagher had left the state, if not openly, at least without concealment of his intention. It was shown that he had openly and freely visited ticket offices inquiring about railroad and steamship transportation; that several days prior to his departure he called upon his relatives and friends to bid them good-bye. He declared that it was his intention to make an extended tour of Europe; that he was not under the process of the court; that the time within which he himself could have been indicted for complicity in the crime charged against petitioner had expired; that there was no reason for his staying in San Francisco any longer, and that he was "not coming back until the whole thing blows over."

Gallagher in fact did go to New York, and from there to Europe. He has never since returned to this jurisdiction; and it is not pretended by respondents that anyone knows when, if ever, he will return.

Months afterward it was shown in a supplemental inquiry that Gallagher was in Vancouver, British Columbia, and, in letters written to his brother in San Francisco, declared that he did not know when, if ever, he would return to California.

These facts are not denied in the return filed in this court to the alternative writ of mandate; and upon the hearing of the writ it was, upon behalf of the respondents, admitted that "the facts as stated both in argument and in the appendix, consisting of two volumes (containing some three hundred and forty-eight pages of printed matter) which have been

filed herein and made a part of petitioner's petition, are correct in detail.''

In the face of this unquestioned and undisputed showing it is difficult, if not impossible, to conceive a plausible theory in support of respondents' contention that the trial of petitioner's cases was continued for good cause and in the exercise of a sound discretion. None has been suggested by respondents because, as we apprehend, none could be suggested which would meet with the sanction of the settled and well-known rule of law by which a trial court must be guided and governed in granting or refusing the postponement of a trial because of the absence of a witness for either party.

The fundamentals of the rule are to be found in the early English case of *The King* v. *d'Eon*, decided in the year 1764, and reported in volume 1 of Blackstone's Reports, at page 510. In that case it was declared by Lord Chief Justice Mansfield that: ''Three things are necessary to put off a trial: first, that the witness is really material and appears to the court to be so; secondly, that the party who applies has been guilty of no neglect; and thirdly, *that the witness can be had at the time to which the trial has been deferred.*''

To this need only be added that a showing made in support of an application for a continuance by either party, in a civil or criminal case, must contain a definite statement of facts from which it may be reasonably inferred that the absent witness will return or can be brought back to the jurisdiction within such time as to prevent an unreasonable delay in the trial of the case and be available as a witness at the time to which the continuance is ordered.

As a matter of course, the rule is applied with ever-increasing rigidity where repeated continuances are asked for, and in such a case a stronger showing of diligence and certainty is required in support of each successive application.

This continues to the present day, and justly so, to be the accepted rule of law in this and every other jurisdiction, where, in the absence of statutory regulation, the common law of England is recognized and revered. It would be a piling of argument upon argument, and a waste of time and space to quote from the authorities which establish and sustain the doctrine here announced upon the authority of *King* v. *d'Eon, supra.* There is no conflict of authority upon the

proposition, and the cases dealing with the subject are numerous, among which may be cited the following: *Frank* v. *Brady,* 8 Cal. 47; *People* v. *Francis,* 38 Cal. 183; *People* v. *Ashnauer,* 47 Cal. 98; *People* v. *Leyshon,* 108 Cal. 440, [41 Pac. 480]; *State* v. *Phillips,* 18 S. D. 1, [98 N. W. 171]; *State* v. *Miller,* 63 Kan. 62, [64 Pac. 1033]; *Ferrell* v. *Commonwealth* (Ky.), 127 S. W. 162; *Power* v. *State,* 8 Ga. App. 408, [69 S. E. 315]; *Adams* v. *State,* 56 Fla. 1, [48 South. 220]; *State* v. *Finch,* 54 Or. 482, [103 Pac. 505]; *Vance* v. *Territory,* 3 Okl. Cr. 208, [105 Pac. 307]; *Ex parte Tittel,* 37 Tex. Cr. 597, [40 S. W. 598]; *State* v. *Olds,* 217 Mo. 305, [116 S. W. 1080]; *Moffit* v. *Chicago Chronicle Co.,* 107 Iowa, 407, [78 N. W. 45].

The showing made here by the respondents meets the requirements of the rule referred to in the one particular only that the testimony of the absent witness is material and indispensable.

As to the second requirement, it affirmatively appears that the state was not free from neglect in this, that the witness was not at the time of his departure, nor at any time prior thereto, under the subpoena or order of the trial court. By its neglect in this respect the state failed to avail itself of the power which it had at its command to compel the attendance of the witness at any future trial of the petitioner.

As to the third requirement it appears that the witness, taking advantage of the situation, as might be expected of any man in his predicament, placed himself without the jurisdiction of the court and beyond all reach of process. The facts of this case do not warrant the ''inference that in all likelihood he will return,'' but if such an inference could be fairly deduced from any of the circumstances surrounding the departure of the witness, it would be immediately met and overcome by his expressed intention that if he ever returned to this jurisdiction it would not be at a time when he could be compelled to attend and testify in any of the cases pending against petitioner. However that may be, it is certain that no such remote inference as is here relied upon will suffice as a showing of good cause for the indefinite postponement of the trial of a criminal case. It concerns the public that there should be an end of litigation in criminal as well as in civil cases, and the law will not tolerate the repeated

and never-ending postponement of a trial upon the vague hypothesis that at some indefinite time in the future a fugitive witness may possibly return to the jurisdiction, and thus be available as a witness in the case.

Of course, underlying all that has been said is the familiar maxim of jurisprudence that ''No one can take advantage of his own wrong''; and a showing that the absence of an adverse witness was instigated, or knowingly aided and abetted, by a defendant would be ample justification for prolonged, if not indefinite, continuances, in aid of a *bona fide* endeavor to apprehend a defaulting witness which in all likelihood will result in his return to the jurisdiction of the court. No such showing, however, has been made or even suggested here.

So clear is the right of the petitioner, upon the law and the facts, to the relief which he seeks that to deny it would be a deliberate defiance of the plain mandate of the law and a manifest misuse of judicial power.

It is, therefore, ordered that a peremptory writ of mandate issue out of and under the seal of this court to the superior court of the city and county of San Francisco and to the Honorable William P. Lawlor, judge thereof, commanding and directing that all of the fourteen indictments pending against Tirey L. Ford, the petitioner herein, be forthwith dismissed.

Chipman, J., and Kerrigan, J., concurred.